## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | 4:11-cv-84-RLY-DML |
| | ) | |
| DENNIS R. WILLIAMS, et al., | ) | |
| | ) | |
| Defendant. | ) | |

### Entry Granting Partial Motion for Summary Judgment

The plaintiff United States seeks a judgment that defendant Dennis R. Williams ("Mr. Williams") is liable to it based on unpaid federal income taxes, penalties, and interest for the taxable years 1996 through 2005 in the amount of $1,336,943.80,[1] plus interest and statutory additions accruing from and after January 19, 2012. In addition, the United States seeks a judgment declaring that it has valid and subsisting tax liens on all property and rights to property belonging to Mr. Williams, including his interest in the real property located at 3914 Utica Pike, Jeffersonville, Indiana (the "Utica Pike Property") described below, and that those liens be enforced through a judicial sale of the subject property, with the distribution of the net sale proceeds to be determined by further order of this Court.

The United States has also named Leslie Ann Williams, the Indiana Department of Revenue, and Clark County, Indiana, as defendants because they each have or may claim an interest in the subject property.

Defendants Mr. Williams and Leslie Ann Williams (the "defendants") object to the United States' motion on the basis that there is a lack of evidence of compliance with 26 U.S.C. §§ 6213(a) and 7401, that the tax assessment numbers are arbitrary, and that the United States' motion is premature. The Indiana Department of Revenue and Clark County, Indiana, do not object to the United States' motion.

---

[1] The United States' motion for summary judgment at various points references the amount of liability as $1,312,669.24. The evidence supports the larger amount of $1,336,943.80. The former is assumed to be a typographical error.

This court has subject matter jurisdiction over the claims presented in this action. The United States is seeking unpaid taxes. Since the United States is a party to the litigation, this court has jurisdiction pursuant to 28 U.S.C. §§ 1345, 1346(e), and 26 U.S.C. § 7402(a).

## Summary Judgment Standard

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted). The motion for summary judgment in this civil rights action, as with any such motion, must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears "the initial responsibility of informing the district court of the basis for its motion," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322. However, the moving party is not required to negate those portions of the nonmoving party's claim on which the nonmoving party bears the burden of proof. *Id.* at 323. Once the moving party demonstrates that there is no genuine issue of material fact, the nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. See *Harney,* 526 F.3d at 1104 (citing cases). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372 (2007). "The mere existence of a factual dispute is insufficient to overcome a motion for summary judgment; instead the nonmovant must present definite, competent evidence in rebuttal." *Parent v. Home Depot U.S.A., Inc.*, 2012 WL 4329332, 2 (7th Cir. September 24, 2012) (finding summary judgment was appropriate because non-movant failed to present evidence to counter the motion).

## Material Facts

### *Tax Debt Liability*

Mr. Williams did not file Forms 1040, U.S. Individual Income Tax Returns, with the Internal Revenue Service ("IRS") for the taxable years at issue, 1996 through 2005, and did not fully pay his federal income tax liabilities for those years.

For each of the taxable years at issue, the IRS performed an examination, concluded that Mr. Williams had gross income derived from his podiatry practice in Jeffersonville, Indiana, and from other payments made to Mr. Williams that were reported to the IRS through Forms 1099, and that there were deficiencies with respect to those taxable years. As a result of these examinations and notices of deficiencies, a delegate of the Secretary of the Treasury of the United States made assessments against Mr. Williams for unpaid federal income taxes, penalties, and interest, for the taxable years and amounts listed in Attachment Number 1 of this Entry. On the date of each tax assessment a delegate of the Secretary of Treasury sent notice of the assessment and demand for its payment to Mr. Williams.

Mr. Williams failed, neglected, or refused to fully pay the amounts of the liabilities associated with the assessments listed in Attachment Number 1, and, after application of all credits, payments, and abatements, he is liable to the United States in the amount of $1,336,943.80, plus statutory additions, including interest, accruing from and after January 19, 2012, as follows:

| Taxable Year | Balance Due as of January 19, 2012 |
|:---:|:---:|
| 1996 | $161,343.78 |
| 1997 | $178,561.70 |
| 1998 | $165,452.71 |
| 1999 | $153,238.49 |
| 2000 | $153,882.09 |
| 2001 | $100,651.57 |
| 2002 | $122,491.84 |
| 2003 | $124,740.56 |
| 2004 | $102,138.12 |
| 2005 | $74,442.94 |
| **Total** | **$1,336,943.80** |

*Tax Liens*

The United States filed notices of the federal tax liens with the Clark County Recorder's Office in Clark County, Indiana, on the dates, and for the income tax years, as follows:

| Taxable Year | Date Filed |
|:---:|:---:|
| 1996 | 12/03/2004 |
| 1997 | 12/03/2004 |
| 1998 | 12/03/2004 |
| 1999 | 12/03/2004 |
| 2000 | 12/03/2004 |
| 2001 | 10/05/2007 |
| 2002 | 10/05/2007 |
| 2003 | 10/26/2007 |
| 2004 | 10/26/2007 |
| 2005 | 05/21/2008 |

By Warranty Deed, dated March 6, 1991, Mr. Williams and Leslie Ann Williams, as husband and wife, acquired ownership of and title to the Utica Pike Property, which consists of Parcel 011-1-0320 and Parcel 011-1-380, and which is legally described as follows:

A part of Survey No. 6 of the Illinois Grant in Utica Township of Clark County, Indiana, being a part of the same land conveyed to George Voigt at Deed Record 151, page 532 of the Cark [sic] County Records and more fully described as follow [sic], to wit:

Commencing at an iron pipe set over a stone placed at the intersection of the Southerly line of the Utica Pike (50 foot R/W) with the line dividing Surveys No. 5 and 6 of the Illinois Grant, running thence North 32 deg. 30' E., 992.75 feet with the Southeast line of Utica Pike to an iron pipe which is the true place of beginning; thence continuing North 32 deg. 30' East, with the line of the Utica Pike 75.0 feet to an iron pipe; thence South 53 deg. 03.4' E., 282.48 feet to an iron pipe; thence continuing South 53 deg. 03.4' E., 81.0 feet to an iron pipe; thence South 40 deg. 04.7' W., 126.65 feet to an iron pipe; thence North 44 deg. 41.6' West, 79.69 feet to an iron pipe; thence continuing North 44 deg. 41.6' West, 274.82 feet to the true place of beginning and

4

containing 0.826 acres of land. The bearings herein refer to the true meridian as obtained by polar observation and the bearing of the within mentioned grant line is North 36 deg. 00' West.

ALSO, the following described real estate situate in the County of Clark and in the State of Indiana, to-wit:

A part of Survey No. 6 of the Illinois Grant in Utica Township of Clark County, Indiana, being a part of the same land conveyed to George F. Voigt, at Deed Record 151, page 532, and bounded as follows:
Commencing at an iron pipe set over a stone which marks the intersection of the line dividing Surveys No. 5 and 6 of the Illinois Grant with the Southerly line of the Utica Pike, running thence North 32º 30' E., 1067.13 feet with the Southerly line of the Utica Pike to a point within a power pole, Lloyd Dowdell's most Northerly corner (D.R. 231 page 38); thence South 53º 03.4' East, 363.48 feet to an iron pipe at said Dowdell's most Easterly corner, which is the true place of beginning. Thence continuing South 53º 03.4' East, 315.32 feet to an iron pipe in Marion Eve's Line (D.R. 191 page 301); thence with said Eve's line South 47º 04.7' West 172.08 feet to an iron pipe, the East corner of a 1.405 acre lot; thence North 44º 41.0' West 295.23 feet to an iron pipe at the most Southerly corner of said Dowdell's lot; thence with Dowdell's line North 40º 04.7' East, 126.65 feet to the true place of beginning, and containing 1.041 acres of land.

Being the real property conveyed by INB Banking Company to Mr. Williams and Leslie Ann Williams, husband and wife, by Warranty Deed, dated March 6, 1991, and recorded with the Clark County Recorder's Office on March 12, 1991, at DRA. 23, Inst. No. 2817.

Dkt. 34-13 (Warranty Deed).

Yvette Stiger, a Revenue Officer Advisor employed by the IRS (which is a Bureau of the U.S. Department of the Treasury) testified that a delegate of the Secretary of the Treasury authorized and requested the Department of Justice to file a civil action to reduce to judgment the unpaid federal income taxes, penalties, and interest owed by Mr. Williams for taxable years 1996 through 2005, and to enforce the associated federal tax liens against the Utica Pike Property. Her testimony is based on her review of the IRS administrative files for the federal individual income tax liabilities of Mr. Williams for taxable years 1996 through 2005, including the "letter dated May 26, 2010, sent by a delegate of the Secretary of the Treasury, authorizing and requesting the Department of Justice to file an action to reduce to judgment the unpaid federal income tax assessments made against Mr. Williams for taxable years 1996, 1997, 1998, 1999, 2000, 2001, 2002,

2003, 2004, and 2005, and to enforce federal tax liens against the real property located at 3914 Utica Pike, Jeffersonville, Indiana." Dkt 34-1 at p. 2.

## Discussion

An assessment by the IRS is "essentially a bookkeeping notation" that "is made when the Secretary of the Treasury or his delegate establishes an account against the taxpayer on the tax rolls." *Laing v. United States*, 423 U.S. 161, 171 n.13 (1976) (citing 26 U.S.C. § 6203). "It is well established in the tax law that an assessment is entitled to a legal presumption of correctness–a presumption that can help the Government prove its case against a taxpayer in court." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002) (citations omitted). The legal presumption of correctness "imposes upon the taxpayer the burden of proving that the assessment is erroneous." *Pittman v. Commissioner*, 100 F.3d 1308, 1313 (7th Cir. 1996) (*quoting Gold Emporium, Inc. v. Commissioner*, 910 F.2d 1374, 1378 (7th Cir. 1990)) (other citations omitted). If a taxpayer does not pay an assessed tax liability after receiving notice of assessment and demand for payment, a lien for the unpaid taxes attaches on all property belonging to the taxpayer. See 26 U.S.C. §§ 6321, 6322; *U.S. v. Wesselman,* 406 Fed. Appx. 64, 65 (7th Cir. 2010).

The United States argues that this court should grant its motion for partial summary judgment because there is no genuine dispute as to any material fact concerning Mr. Williams' liability for the tax debts at issue, the validity of the federal tax liens, or the right of the United States to enforce those liens against Utica Pike Property. The United States argues that because it has provided Forms 4340 Certificate of Assessments, Payments, and Other Specified Matters with certification cover sheets ("Certificates of Assessments"), those assessments are entitled to a legal presumption of correctness and Mr. Williams bears the burden of proving that he is not liable for the tax debts. Mr. Williams, the United States argues, will not be able to meet that burden, therefore, the United States is entitled to judgment on Mr. Williams' tax liabilities as a matter of law. The defendants object to the United States' motion—not by providing any evidence that Mr. Williams is not liable for the tax debts—but by attacking the United States' evidence. Each of the defendants' arguments is discussed below.

### 1.     Unsupported Material Facts in Dispute

The defendants do not dispute the merit of the United States' claims, but instead attack the evidence upon which those claims are based. They argue that there are five material facts in dispute, but a dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson*, 477 U.S. at 248. "The mere existence of a factual dispute is insufficient to overcome a motion for summary judgment; instead the nonmovant must present definite, competent evidence in rebuttal." *Parent,* 2012

WL 4329332 at * 2. The defendants have not provided any evidence to support their position that there is a material question of fact regarding the following:

> 1)   Whether Mr. Williams filed tax forms for years 1996 through 2005 and paid any tax claims.
>
> 2)   Whether the IRS performed any examination; Mr. Williams had income from a podiatry practice; any purported payments were reported on any 1099 form; and notices of deficiency issued.
>
> 3)   Whether the United States issued any assessment notices and to what address the notices were sent.
>
> 4)   Whether Mr. Williams paid any amount allegedly owed.
>
> 5)   Whether any delegate of the Secretary of Treasury authorized and requested this action to be filed.

Without any evidence in support of these proposed material facts in dispute they are disregarded.

### 2.   Discovery

The defendants object to the United States' motion because they did not have an opportunity to conduct discovery. Dkt. 40 at p. 2. This objection is overruled.

Rule 56(d) of the *Federal Rules of Civil Procedure* provides that: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." "Requests for additional discovery [under Rule 56(d)] must be specific and cannot be based only on speculation." *Trzeciak v. State Farm Fire & Cas. Co.*, 809 F. Supp.2d 900, 905 (N.D. Ind. 2011) (*citing Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 885 (7th Cir. 2005)). "Moreover, it is particularly appropriate for a court to rule on a motion for summary judgment without allowing discovery first when the nonmovant has not shown how discovery would be likely to unearth any genuine dispute of material fact." *Id.* (*citing Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000)).

The defendants have not shown by affidavit or declaration any specified reasons why they cannot present facts essential to justify their opposition to the United States' motion, nor have they described what specific discovery they seek or how that discovery would support a dispute of material fact. Defendants state in their joint declaration:

> At a minimum, we should be entitled to discover information about the government's numbers alleged for its income, tax, and penalty claims made against Dennis Williams. We also believe discovery will reveal the "Certificates of Assessments & Payments" offered by the government in this case were prepared solely for litigation.
>
> 3.     We have not been provided with any underlying records (if any exist) for any of the "Certificates of Assessments And Payments" submitted by the government in support of its summary judgment motion (Exhibits A-1 to A-10). Under Evidence Rule 1006, we are entitled to review documents underlying any summary, but have not been provided any in this case. We believe there will be little, if any, evidence to support the line-item entries made in these summary documents.

Dkt. 40-2 at ¶¶ 2-3. These discovery requests are non-specific and speculative. There is no indication that discovery would bolster the defendants' arguments in opposition to summary judgment which for the reasons explained below are futile with no chance of success.

Mr. Williams and his own records are clearly the best source of the information that he now claims he needs to oppose the United States' motion. Mr. Williams has chosen to oppose the United States' motion by criticizing the United States' evidence and requesting discovery, rather than coming forward with competent evidence that would undoubtedly be within his possession, custody, or control. For example, Mr. Williams could have filed (if true) an affidavit stating that he filed tax forms for years 1996 through 2005 and paid all applicable taxes. He could have testified (if true) that he did not have income from a podiatry practice. In addition, the defendants were mailed a copy of the United States' motion for summary judgment along with its supporting brief and evidence. *See* dkt. 33 at p. 4 (Certificate of Service). The defendants are not, as they suggest, in the dark regarding the tax assessments at issue.

### 3.     Evidentiary Objections

The defendants object to the admissibility of the United States' evidence. Each of these objections is rejected for the reasons explained below.

### a.     Certificates of Assessment

The United States submitted Certificates of Assessments with its summary judgment motion as evidence that defendant Mr. Williams is liable for the tax debts at issue and, separately, that notices and demands of the underlying assessments of

tax, interest, and penalties against Mr. Williams were properly sent to him. *See* dkts. 34-2 through 34-11. Certificate of Assessments are *prima facie* evidence of the validity and correctness of the underlying assessments. In *Hefti v. IRS*, the Seventh Circuit explained that "Certificates of Assessments and Payments establish the fact of assessment and carry with them a presumption of validity and that the assessments they reflect were properly made." *Hefti v. IRS*, 8 F.3d 1169, 1172 (7th Cir. 1993) (citations omitted). "Certificates of Assessments and Payments provide a sufficient basis for establishing that the assessments at issue were duly made without requiring discovery of the underlying source documents". *Id.* at 1174. Where, as here, a Certificate of Assessment is accompanied by a Certificate of Official Record, it may be relied upon by the district court in ruling on the government's motion for summary judgment. *See id.* at 1172-73; *see also* Fed. R. Evid. 803(8) (hearsay exception for public records and statements); Fed. R. Evid. 902(1) (domestic public documents that are sealed and signed are self-authenticating); Fed. R. Evid. 902(2) (domestic public documents that are not sealed but are signed and certified are self-authenticating). In these circumstances, the United States is not required to produce source documents if the United States has already produced Certificates of Assessments. *See March v. Internal Revenue Service*, 335 F. 3d 1186, 1189 (10th Cir. 2003) ("[T]he courts have generally held that the IRS need not provide a taxpayer with a copy of the actual Summary Record of Assessment").

      The defendants object to the Certificates of Assessments identified as Exhibits A-1 through A-10 (see dkt 34-2 through 34-11) on the ground that they are summaries, do not contain the actual underlying records as required by *Federal Rule of Evidence* 1006, and were prepared solely for litigation. The defendants' objection is overruled. Certificates of Assessments (also referred to as Forms 4340) are admissible themselves under the *Federal Rules of Evidence* as records of the Internal Revenue Service, and *Federal Rule of Evidence* 1006 does not render them inadmissible. "[O]fficial documents-such as IRS forms-are probative evidence in and of themselves and, in the absence of contrary evidence, are sufficient to establish that notices and assessments were properly made. Because the Forms are not merely a summary record of the proof, but are themselves proof that assessments were made, Rule 1006 does not render them inadmissible." *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992) (citation omitted). The Certificates of Assessments are independent evidence admissible to prove that Mr. Williams is liable for the tax debts at issue and, separately, that notices and demands of the underlying assessments were sent to him. *See id.* In addition, the defendants' assertion that the Certificates of Assessments were prepared exclusively for litigation is not a valid objection. The Certificates of Assessment are an exact transcript of the account maintained by the IRS on its computer system. In addition, the admissibility of the Certificates of Assessments does not necessarily rest upon the business records hearsay exception set forth at Fed. R. Evid. 803(6). Rather, the Certificates of Assessments qualify for the hearsay exception for public records and statements

and, furthermore, the documents are self-authenticating. *See Hefti*, **8 F.3d at 1172-73; Fed. R. Evid. 803(8), 902(1), and 902(2)).**

### b.     Naked Assessment Exception

The defendants argue that the alleged income numbers and the assessment amounts are "naked assessment" numbers "pulled out of the blue sky." The defendants' attempt to invoke the so-called "naked assessment" exception to the general presumption of correctness afforded to the Certificate of Assessments is overruled. "The general rule is that a presumption of correctness attaches to the Commissioner's deficiency determination; the taxpayer has the burden of disproving it. A narrow exception exists where the determination is arbitrary and erroneous or without rational foundation." *Estate of Kanter v. Commissioner*, **337 F.3d 833, 858 (7th Cir. 2003)**, *rev'd on other grounds Ballard v. Commissioner*, **544 U.S. 40 (2005)** (*quoting Pfluger v. Comm'r*, **840 F.2d 1379, 1382 (7th Cir. 1988)).**

Here, the United States has come forward with credible evidence of the assessments' validity in the form of the Certificates of Assessments and the Declaration of Yvette Stiger (see dkt 34-1 through 34-11). Ms. Stiger's declaration meets the low threshold of showing that the assessments at issue are not "arbitrary and erroneous or without rational foundation." The Certificates of Assessments submitted by the United States also serve as *prima facie* evidence of the validity and correctness of the assessments. *See Hefti*, **8 F.3d at 1172**; *see also* dkt 34-4 at p. 11 (explaining each of the entries listed therein describing the assessments of tax, penalties, and interest, as well as the notice of deficiency that were prepared and sent to Mr. Williams). In addition, the Second Declaration of Yvette Stiger (see dkt 42 and attachments labeled exhibits C-1, C-3, C-4, C-6, C-7, and C-9) provides additional evidence of the notices of deficiency in Mr. Williams' federal income tax liabilities for 1996 through 2005, which were properly prepared by the IRS and mailed to Mr. Williams.

This evidence produced by the United States is more than enough to show that the assessments at issue are not "arbitrary and erroneous or without rational foundation" thereby placing the burden on Mr. Williams to prove otherwise. Mr. Williams has not met his burden of proving that any of the assessments are arbitrary and erroneous or without rational foundation. *Stuart v. United States*, **337 F.3d 31, 35 (1st Cir. 2003)** (once the Government produces Certificates of Assessments, the burden shifts to the taxpayer to "present[] credible evidence that the assessments were without foundation").

### 4.     Authorization under 26 U.S.C. § 7401

The defendants argue that this court lacks jurisdiction over this case because there is no proof of authorization under 26 U.S.C. § 7401. Section 7401 provides:

> No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.

The defendants argue that because they contest that § 7401's requirements have been met and because the United States has not produced evidence of compliance this action must be dismissed for lack of jurisdiction.

The defendants' argument is rejected. Even if § 7401's requirements are essential to this court's jurisdiction,[2] the evidence submitted by the United States in the form of the Declaration of Yvette Stiger, an employee of the IRS, is sufficient. Ms. Stiger testifies that: "A delegate of the Secretary of the Treasury authorized and requested the Department of Justice to file a civil action to reduce to judgment the unpaid federal income tax assessments made against Mr. Williams for taxable years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2005, and to enforce federal tax liens against the real property located at 3914 Utica Pike, Jeffersonville, Indiana." Exhibit A at ¶ 7 (dkt 34-1). The defendants argue that this claim is actually a legal conclusion and that Ms. Stiger does not have personal knowledge of this authorization. This argument is frivolous. Ms. Stiger testified that her testimony is based on her review of the IRS administrative files for the federal individual income tax liabilities of Mr. Williams for taxable years 1996 through 2005, including the "letter dated May 26, 2010, sent by a delegate of the Secretary of the Treasury, authorizing and requesting the Department of Justice to file an action to reduce to judgment the unpaid federal income tax assessments made against Dennis R. Williams for taxable years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2005, and to enforce federal tax liens against the real property located at 3914 Utica Pike, Jeffersonville, Indiana." Dkt 34-1 at p. 2. In addition, the law presumes that Department of Justice attorneys act within their authority. *United States v. One 1941 Cadillac Sedan*, 145 F.2d 296, 299 (7th Cir. 1944) ("The United States attorney is a part of the Department of Justice. He must be presumed, in absence of evidence to the contrary, to have acted within his authority"); *see* 28 U.S.C. §§ 516, 517. The defendants have not come forward with any evidence supporting their argument that this case is an unauthorized proceeding.

---

[2] Two district courts outside this circuit have held § 7401's requirements are essential to the court's jurisdiction. See *PAF, Inc. v. BA Properties, Inc.*, 24 F. Supp. 2d 545 (E.D. Va. 1998); *U.S. v. One 1972 Cadillac, Coupe Deville, 2-Door Hardtop, ID. No. 6D47R2Q238129*, 355 F. Supp. 513, 515 (D.C. Ky. 1973) ("The failure to prove jurisdictional facts when specifically denied is fatal to the maintenance of this action.").

**5.    Compliance with 26 U.S.C. § 6213.**

The defendants argue that the complaint must be dismissed because there is no evidence of compliance with the requirements for removing the bar of 26 U.S.C. § 6213.

Sections 6211 and 6212 the Internal Revenue Code (26 U.S.C.), authorize the Secretary of the Treasury to determine a deficiency with respect to a taxpayer's tax obligations for a particular tax period and mail the taxpayer notice of such determination (often referred to as the "notice of deficiency" or "90-day letter"). 26 U.S.C. §§ 6211, 6212. Section 6213 of the Internal Revenue Code provides the taxpayer with the right to file, within 90 days after the statutory notice is mailed (or 150 days if the notice is addressed to a person outside the United States), a petition with the United States Tax Court for a redetermination of the deficiency and, with exceptions that do not apply here, prohibits the making of an assessment of the deficiency against the taxpayer until the notice of deficiency is mailed, the 90-day period expires, and, if a petition has been filed with the Tax Court, the decision of the Tax Court has become final. While the statutory notice of deficiency must be sent by certified or registered mail in order for the subsequent assessment to be valid, there is no requirement that the notice actually be received by the taxpayer. *Guthrie v. Sawyer*, 970 F. 2d 733, 737 (10th Cir. 1992); *Williams v. Commissioner*, 935 F. 2d 1066, 1067 (9th Cir. 1991); *Keado v. United States*, 853 F. 2d 1209, 1111-1112 (5th Cir. 1988).

The defendants argue that "no evidence exists of the contents of any purported 'notice of assessment and demand for payment' notice(s), nor to what address any such notice(s) were purportedly mailed to." *See* dkt. 40 at p. 5. The defendants argue that there is no evidence of compliance with §§ 6211 and 6212. They describe Ms. Stiger's declaration that "the assessments described below are based on those examination audits and properly mailed notices of deficiency" as an inadmissible conclusion. The defendants argue that the United States has not provided evidence of the alleged notices of deficiency or that these notices were mailed. Dkt. 40 at p. 9. Mr. Williams testifies in his second declaration that he has "no record of any notice(s) of deficiency for the years 1996 through 2005."

In response, the United States points out that the defendants do not claim that notices of deficiency with respect to Mr. Williams' federal income tax obligations for taxable years 1996 through 2005 were not prepared, properly mailed to Mr. Williams, or received by Mr. Williams. Rather, the defendants simply complain that the evidence submitted by the United States in support of its motion fails to show that the notices were prepared and mailed to Mr. Williams. In response, the United States contends that the legal presumption of correctness and validity that attaches to the assessments upon the submission of the Certificates of

Assessments, also attaches to the notices of deficiency because a valid assessment presupposes the existence and mailing of a notice of deficiency.

The defendants' objection is overruled for two reasons. First, the case law supports the conclusion that all necessary prerequisites to the validity of official action are presumed to have been complied with, and where the contrary is asserted it must be affirmatively shown. *See Fior D'Italia, Inc.*, 536 U.S. at 242; *Hefti*, 8 F.3d at 1172 ("Certificates of Assessments and Payments establish the fact of assessment and carry with them a presumption of validity and that the assessments they reflect were properly made.") *Pittman v. Commissioner*, 100 F.3d 1308, 1313 (7th Cir. 1996) ("The legal presumption of correctness 'imposes upon the taxpayer the burden of proving that the assessment is erroneous.'") (*quoting Gold Emporium, Inc. v. Commissioner*, 910 F.2d 1374, 1378 (7th Cir. 1990)) (other citations omitted). The defendants have not presented any evidence to overcome the presumption of correctness that attaches to the Certificates of Assessment and the Notices of Deficiency. Second, the evidence submitted by the United States more than satisfies its burden of proof that the notice of deficiency prerequisites were met. In her declaration, Yvette Stiger stated that:

> For each taxable years 1996 through 2005, the IRS performed an examination audit, concluded that Dennis R. Williams had gross income derived from his podiatry practice in Jeffersonville, Indiana, and from other payments made to Dennis R. Williams that were reported to the IRS through Forms 1099, and determined there were deficiencies in respect of Dennis R. Williams' federal income taxes. The assessments described below are based on those examination audits and properly mailed notices of deficiency.

Dkt. 34-1 at ¶ 3.[3] Contrary to the defendants' arguments, Ms. Stiger's declaration is

---

[3] Ms. Stiger's statements are based on her review of the following records maintained by the IRS in the ordinary course of business:

   a.   IRS Forms 4340, Certificates of Assessments, Payments, and Other Specified Matters, for the individual income tax liabilities of Dennis R. Williams for taxable years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2005 ...;

   b.   IRS administration files for the federal individual income tax liabilities of Dennis R. Williams for taxable years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2005;

   c.   Information from the IRS Integrated Data Retrieval System computer database, including the balances owing for the federal individual income tax liabilities of Dennis R. Williams for taxable years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2005; and,

   d.   The letter dated May 26, 2010, sent by a delegate of the Secretary of the

fully admissible evidence that the notices exist and were properly mailed to Mr. Williams. The United States also submitted the Certificates of Assessments which are sufficient evidence that the deficiency notices were properly mailed to Mr. Williams. Here, the Certificates of Assessment for 1996, 1997, 1998, 1999, 2000, 2001, 2002, and 2005 each contain an entry that states "Additional Tax Assessed by Examination Audit Deficiency per Default of 90 Day Letter." *See* dkts. 34-2 through 34-8 and dkt. 34-11). The Certificates of Assessment for 2003 and 2004 each contain an entry that states "02-06-2007 Statutory Notice of Deficiency." *See* dkts. 34-9 and 34-10. Finally, the United States provided a Second Declaration of Yvette Stiger, (see dkt 42-1) which authenticates copies of the relevant notices of deficiency and mail logs (Postal Service Forms 3877 or equivalent), showing that those notices were sent by certified mail to Mr. Williams. *See* dkt 42-1 through 42-10. In addition, the declaration of Thomas D. Mathews, whose signature appears on the 2001 and 2002 notices, and the Declaration of Henry Slaughter, whose signature appears on the 2005 notice, were submitted as evidence that the notices were properly sent by certified mail. In their respective declarations, Mr. Mathews and Mr. Slaughter confirm that the procedures in place at the time these notice were sent required that such notices of deficiency be sent by certified mail and that the mail logs submitted by the United States are IRS records kept in the ordinary course of business to document the fact that such notices were sent by certified mail.

Given the evidence presented by the United States, the defendants' argument that there is no evidence of any compliance with the requirements for removing the bar of 26 U.S.C. § 6213 is rejected.

## 6.  Judicial Sale

Section 7403(a) of the Internal Revenue Code authorizes the federal government to bring suit to enforce its tax liens; and if the government prevails on the merits, the court "may decree a sale of such property [i.e., the property against which the lien was filed], by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c).

The United States seeks to satisfy, or at least partially satisfy, the outstanding tax liabilities of Mr. Williams through the judicial sale of Utica Pike Property. At the time the IRS made the assessments at issue, gave notice of them to Mr. Williams, and demanded their payment, federal tax liens arose against all property and rights to property of Mr. Williams, including his interest in the Utica

---

Treasury, authorizing and requesting the Department of Justice to file an action to reduce to judgment the unpaid federal individual income tax assessments made against Dennis R. Williams for taxable years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, and 2005, and to enforce federal tax liens against the real property located at 3914 Utica Pike, Jeffersonville, Indiana.

Pike Property. *See* 26 U.S.C. § 6321. Each of those liens continues until the underlying liability is satisfied or it becomes unenforceable due to the lapse of time. *See* 26 U.S.C. § 6322; *see also United States v. Librizzi*, 108 F.3d 136, 137 (7th Cir. 1997). The amount of each lien equals the tax owed "including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto." 26 U.S.C. § 6321.

Under Indiana law, Mr. Williams and Leslie Ann Williams own the Utica Pike Property as tenants by the entirety. *See Richards v. Richards*, 110 N.E. 103, 104 (1915). The deed that granted the Utica Pike Property to Mr. Williams and Leslie Ann Williams describes them as "husband and wife" and does not express, clearly or otherwise, any intention to create a joint tenancy or tenancy in common. In *United States v. Craft*, the Supreme Court held that each tenant by the entirety "possesses individual rights in the estate sufficient to constitute 'property' or 'rights to property' for the purposes of the [federal tax] lien. . . ." 535 U.S. 274, 276 (2002). Mr. Williams, therefore, possesses an individual right sufficient for the United States' tax liens to have attached to the Utica Pike Property.

The United States may enforce federal tax liens against property owned by the taxpayer, including real property, through the sale of such property. 26 U.S.C. § 7403. A judicial order of sale of property subject to federal tax liens "is consistent with the policy inherent in the tax statutes in favor of the prompt and certain collection of delinquent taxes." *United States v. Rodgers*, 461 U.S. 677, 694 (1983). Under limited circumstances, such as when two persons own property jointly, but only one person has been assessed for deficient taxes, the court, after applying a balancing test, may determine that a judicial sale is not appropriate at the present time. *See id.* at 709-10. In making this determination, the court may consider the so-called "*Rodgers* factors":

> (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes,"

> (2) "whether the third party with a non-liable separate interest in the property would, in the normal course of events . . ., have a legally recognized expectation that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors,"

> (3) "the likely prejudice to the third party, both in personal dislocation costs and in the sort of practical undercompensation," and

> (4) "the relative character and value of the non-liable and liable interests held in the property . . . ."

*Id.* at 710-11. The Supreme Court has cautioned that the district court's discretion to not decree a sale under § 7403 should be limited. "We do emphasize, however, that the limited discretion accorded by § 7403 [to not decree a sale] should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.* at 711.

The United States argues that the *Rodgers* analysis strongly favors a judicial sale of the Utica Pike Property. First, the non-liable co-owner here, Leslie Ann Williams, is not seeking to prevent a sale of the property on any *Rodgers* basis. Rather, she invokes *Rodgers* as support for her right, if there is a sale, to "at least 50% of the gross proceeds as a non-liable party." *See* Dkt. 22 at ¶ 20. This motion seeks to treat her as an equal owner of the property. Second, the United States' financial interests would be greatly prejudiced if it were relegated to a forced sale of Mr. Williams' partial interest in the property. Even assuming that a buyer of Mr. Williams' partial interest could be found, which is very unlikely, the price that interest would bring would no doubt be much less than one-half of the proceeds that a sale of the entire property would bring. Third, although as a tenant by the entirety, Leslie Ann Williams has an expectation, recognized under Indiana law, that the entire property would not be subject to forced sale by Mr. Williams or his creditors*, see Echelbarger v. First Nat. Bank of Swayzee*, 5 N.E.2d 966, 968 (Ind. 1937), state law exemptions do not insulate property from the reach of the United States. *See Rodgers*, 461 U.S. at 700-01. Fourth, it appears that selling the entire property would cause no prejudice to Leslie Ann Williams and, in fact, would be in her best interests, at least in terms of compensation, given that selling only Mr. Williams' partial interest would devalue her partial interest. Furthermore, on information and belief, the property is not occupied by Mr. or Mrs. Williams, or by anyone else, and therefore a judicial sale would not cause Mrs. Williams to incur any personal dislocation costs. Finally, Mrs. Williams' interest in the Utica Pike Property is that of one of two tenants by the entireties and the value of her interest, which would be fully compensated if there is a sale of the property, as she would be awarded half of the sale proceeds, net of any outstanding and unpaid real estate taxes and the reasonable costs of sale, as well as any claims of her creditors. Accordingly, this Court should decree a judicial sale of the Utica Pike Property.

The defendants argue that that there are no facts regarding the property market value and whether any sale would provide anything at all to the United States after any superior claims are paid. This argument is rejected. The defendants have not offered any evidence as to the value of the Utica Pike Property, the supposed "superior claims," or the amount of proceeds the United States would collect.

The other defendants in this action, Indiana Department of Revenue, and Clark County, Indiana, have each asserted an interest in the Utica Pike Property, in their respective answers, and have requested that if the property is sold pursuant

to this Court's order, their interest and priority be recognized in this Court's order governing the distribution of sale proceeds. Similarly, the United States does not seek to deprive Mrs. Williams of her 50% share of the proceeds of such sale, if any, after the payment of the reasonable costs of sale and any real estate taxes due and owing.

Applying the legal principles set forth above to the facts of this case and in accordance with 26 U.S.C. § 7403(c), it is determined that the federal tax liens described above shall be enforced through the judicial sale of the entire real property located at 3914 Utica Pike, Jeffersonville, Indiana, free and clear of all rights, titles, liens, claims, and interests of the parties hereto, with the distribution of the proceeds of such sale, after the payment of the reasonable costs of sale and any real estate taxes due and owing to Clark County, Indiana, to be determined by further order of this Court.

## Conclusion

For the foregoing reasons, the court:

1.      **Grants** the United States' partial motion for summary judgment [33].

2.      **Declares** that defendant Dennis R. Williams is liable to the United States of America for unpaid federal income taxes, penalties, and interest for the taxable years 1996 through 2005 in the amount of $1,336,943.80, plus statutory additions accruing from and after January 19, 2012, including interest pursuant to 26 U.S.C. §§ 6601, 6621, 6622, and 28 U.S.C. § 1961(c);

3.      **Declares** that the real property located at 3914 Utica Pike, Jeffersonville, Indiana, is owned equally by the defendant Dennis R. Williams and the defendant Leslie Ann Williams, and, therefore, the United States holds valid and subsisting federal tax liens for the tax debts described above against one half of such real property; and,

4.      **Decrees** that the federal tax liens described above shall be enforced, pursuant to 26 U.S.C. § 7403, through the judicial sale of the entire real property located at 3914 Utica Pike, Jeffersonville, Indiana, free and clear of all rights, titles, liens, claims, and interests of the parties hereto.

5.      The distribution of the proceeds of such sale, after the payment of the reasonable costs of sale and any real estate taxes due and owing to Clark County, Indiana, shall be **determined by further order of this Court**. In addition, this Entry does not resolve the validity and extent of claims of the Indiana Department of Revenue or the priority of liens between the United States and the Indiana Department of Revenue.

6.    **No partial final judgment shall issue** at this time as to the claims resolved in this Entry.

**IT IS SO ORDERED.**

Date: 09/28/2012

RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

**Distribution:**

**All Electronically Registered Counsel**

**DENNIS R. WILLIAMS**
**201 East Market Street**
**Jeffersonville, IN 47130**

**LESLIE ANN WILLIAMS**
**201 E. Market Street**
**Jeffersonville, IN 47130**